UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

|  |  |
|---|---|
| IN RE APPLICATION OF THE  ) <br> UNITED STATES OF AMERICA FOR  ) <br> AN ORDER AUTHORIZING THE  ) <br> INSTALLATION AND USE OF PEN  ) <br> REGISTERS AND TRAP AND  ) <br> TRACE DEVICES AND FOR  ) <br> SUBSCRIBER INFORMATION  ) <br>                                                    ) | CASE NO.  19-sw-6180-GPG <br><br><br><br><br><br> Filed Under Restriction |

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. §§ 3122, 3123
AND ORDER PURSUANT TO 18 U.S.C §§ 2703(c)(2) AND 2703(d)

The United States of America, moving by and through Jeremy Chaffin, its undersigned counsel, respectfully submits under restriction from public access this *ex parte* application for an order pursuant to 18 U.S.C. §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") on the AT&T Corporation cell phone number (702) 374-2864, IMEI: 310410190775504, whose listed subscriber is not known, and to obtain information for the accounts revealed by the use of the pen-trap devices pursuant to 18 U.S.C. §§ 2703(c)(2) and 2703(d). In support of this application, the United States asserts:

THE INSTALLATION AND USE OF PEN-TRAP DEVICES

1. This is an application, made under 18 U.S.C. § 3122(a)(1), for an order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and a trap and trace device.

2. Such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and

(3) "a certification by the applicant that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3. The undersigned applicant is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4. The law enforcement agency conducting the investigation is the United States Drug Enforcement Administration.

5. The applicant hereby certifies that the information likely to be obtained by the requested pen-trap devices is relevant to an ongoing criminal investigation being conducted by the United States Drug Enforcement Administration.

6. This Court is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a) because it "has jurisdiction over the offense being investigated," 18 U.S.C. § 3127(2)(A)(i).

## ADDITIONAL INFORMATION

7. Other than the three elements described above, federal law does not require that an application for an order authorizing the installation and use of a pen register and a trap and trace device specify any facts. The following additional information is provided to demonstrate that the order requested falls within this Court's authority to authorize the installation and use of a pen register or trap and trace device under 18 U.S.C. § 3123(a)(1).

8. A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

9. In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications, as described below.

10. The Internet is a global network of computers and other devices. Devices directly connected to the Internet are identified by a unique number called an Internet Protocol, or "IP" address. This number is used to route information between devices. Generally, when one device requests information from a second device, the requesting device specifies its own IP address so that the responding device knows where to send its response. An IP address is analogous to a telephone number and can be recorded by pen-trap devices, and it indicates the online identity of the communicating device without revealing the communication's content.

11. A network is two or more computers or other devices connected to each other that can exchange information with each other via some transmission method, such as by wires, cables, or radio waves. The equipment that connects a computer or other device to the network is commonly referred to as a network adapter. Most network adapters have a Media Access Control ("MAC") address assigned by the manufacturer of the adapter that is designed to be a unique identifying number. An adapter's unique MAC address allows for proper routing of communications on a local area network and may be used for other purposes, such as authentication of customers by some network service providers. Unlike a device's IP address that often changes each time a device connects to the Internet, a MAC address is fixed at the time of manufacture of the adapter. Because the address does not change and is intended to be unique, a MAC address can allow law enforcement to identify whether communications sent or received at different times are associated with the same adapter.

12. On the Internet, data transferred between devices is not sent as a continuous stream, but rather it is split into discrete packets. Generally, a single communication is sent as a series of packets. When the packets reach their destination, the receiving device reassembles them into the complete communication. Each packet has two parts: a header with routing and control information, and a payload, which generally contains user data. The header contains non-content information such as the packet's source and destination IP addresses and the packet's size.

13. In addition, different Internet applications are associated with different "port numbers," or numeric identifiers. The port number is transmitted along with any communication using that application. For example, port 80 typically is associated with communications involving the World Wide Web.

14. Providers use cookies and other software to track the online movements of its customers and to show that one person is using multiple online accounts. Information gathered using such tools is helpful in identifying a user of an account as well as identifying other accounts the customer is using.

15. A cellular telephone, or cell phone, is a mobile device that transmits and receives wire and electronic communications. Individuals using cell phones contract with cellular service providers, who maintain antenna towers covering specific geographic areas. In order to transmit or receive calls and data, a cell phone must send a radio signal to an antenna tower that, in turn, is connected to a cellular service provider's network.

16. In addition to a unique telephone number, each cell phone has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cell phone could take several different forms, including an

Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), or an International Mobile Station Equipment Identity ("IMEI"). When a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course. The unique identifiers—as transmitted from a cell phone to a cellular antenna or tower—are like the telephone number of an incoming call. They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content.

17. In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

18. A cell phone can also be used to exchange text messages with email accounts. The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

19. Cellular phones can connect to the Internet via the cellular network. When connecting through the cellular network, Internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI. Internet

communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication. Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

20. These telephone numbers can include "post-cut-through dialed digits," which are numbers dialed from the cell phone after the initial call set up is completed. For example, some post-cut-through dialed digits may be the actual telephone number called, such as when a subject places a calling card, credit card, or collect call by first dialing a long-distance carrier access number and then, after the initial call is "cut through," dialing the telephone number of the destination party. That final number sequence is necessary to route the call to the intended party and, therefore, identifies the place or party to which the call is being made. In the event that the pen-trap devices capture some post-cut-through dialed digits that could be considered call content, such as account numbers or passwords, despite the government's use of reasonably available technology to avoid the recording or decoding of such content, the United States will make no affirmative investigative use of such information.

## OBTAINING SUBSCRIBER INFORMATION

21. Cingular Wireless, Sprint Nextel Corporation, Leap Wireless Communications, Inc., Cricket Communications, T-Mobile USA, Cellco Partnership d/b/a Verizon Wireless, AT&T Wireless, and Google are providers of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or remote computing services, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under 18 U.S.C. § 2703(d) to require those entities to disclose subscriber information as defined in 18 U.S.C. § 2703(c)(2).

22. This Court has jurisdiction to issue the proposed order for subscriber information because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. §

2703(d). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated.  *See* 18 U.S.C. § 2711(3)(A)(i).

23. A court order under 18 U.S.C. § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the requested subscriber information is relevant and material to an ongoing criminal investigation as follows:

24. From January 2018, the United States government, including the United States Drug Enforcement Administration, has been investigating drug trafficking offenses related to the distribution of counterfeit controlled substances.  The investigation concerns possible violations by Bertoldo NUNEZ PENA of, inter alia, 21 U.S.C. 841(a) and (b)(1) (Manufacturing, distributing, or possession with intent to manufacture or distribute a controlled substance) and 21 U.S.C. 846 (Conspiracy to commit a controlled substance offense).

25. In December 2018, two fentanyl overdoses occurred in Carbondale, CO—one fatal and one non-fatal.  These overdoses involved counterfeit pills, having the appearance of oxycodone pills, which actually contained fentanyl.  Through the course of that investigation, agents identified Bruce Holder as the primary source of supply of these counterfeit pills in the Grand Junction area.  A search of Holder's phone identified NUNEZ PENA as Holder's source of supply for these pills.

26. Agents developed a confidential source ("CS") that was able to make contact with NUNEZ PENA.  The CS has been in communication with NUNEZ PENA through various

phone numbers for approximately a year.  NUNEZ PENA has frequently changed phone numbers and carriers during the course of this communication, providing these new numbers to the CS.  The CS has conducted several controlled purchases of counterfeit fentanyl pills from NUNEZ PENA, which are delivered by various couriers.  Throughout these purchases, NUNEZ PENA is frequently in constant contact with the CS and the couriers.

27. In November 2019, the CS spoke with NUNEZ PENA about making another controlled purchase.  NUNEZ PENA requested that the next deal occur in Arizona, which the CS agreed to.  NUNEZ PENA requested $5,000 as a partial payment for a remaining balance from a prior controlled purchase and offered to front the CS 5,000 fentanyl pills.

28. On November 15, 2019, NUNEZ PENA contacted the CS via voice call, utilizing phone number (702) 374-2864.  During the call, they discussed the details of the controlled buy in Arizona.  NUNEZ PENA confirmed he was going to provide 5,000 fentanyl pills in exchange for a partial payment of $5,000.  To further the investigation, investigators need to obtain the dialing, routing, addressing, and signaling information associated with communications sent to or from that cell phone number.  This information would aid investigators in identifying additional co-conspirators, as well as possible transportation routes of narcotics, stash locations, money laundering methods, and the source of supply for NUNEZ PENA and may identify a larger drug trafficking organization.

29. The pen-trap devices sought by this application will be installed at location(s) to be determined, and will collect dialing, routing, addressing, and signaling information associated with each communication to or from the AT&T Corporation cell phone number (702) 374-2864, IMEI: 310410190775504, including the date, time, and duration of the communication, and the following, without geographic limit:

- IP addresses associated with the cell phone device or devices used to send or receive electronic communications
- Identity of accounts that are linked by creation IP address, recovery email, telephone number, or other identifiers
- Identity of all accounts that are linked to the account by cookies
- Any unique identifiers associated with the cell phone device or devices used to make and receive calls with cell phone number (702) 374-2864, IMEI: 310410190775504, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN
- IP addresses of any websites or other servers to which the cell phone device or devices connected
- Source and destination telephone numbers and email addresses
- "Post-cut-through dialed digits," which are digits dialed after the initial call set up is completed, subject to the limitations of 18 U.S.C. § 3121(c)[1]

### GOVERNMENT REQUESTS

30. For the reasons stated above, the United States requests that the Court enter an Order authorizing the installation and use of pen-trap devices to record, decode, and/or capture the dialing, routing, addressing, and signaling information described above for each communication to or from the AT&T Corporation cell phone number (702) 374-2864, IMEI: 310410190775504, along with the date, time, and duration of the communication, without

---

[1] In the event that the pen-trap devices capture some post-cut-through dialed digits that could be considered call content, such as account numbers or passwords, despite the government's use of reasonably available technology to avoid the recording or decoding of such content, the United States will make no affirmative investigative use of such information.

9

geographic limit. The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

31.     The United States further requests that the Court authorize the foregoing installation and use for a period of sixty days, pursuant to 18 U.S.C. § 3123(c)(1).

32.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order AT&T Corporation and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this Order to furnish, upon service of the Order, information, facilities, and technical assistance necessary to install the pen-trap devices, including installation and operation of the pen-trap devices unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the United States Drug Enforcement Administration, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

33.     The United States further requests that the Court order AT&T Corporation and any other person or entity whose assistance may facilitate execution of this Order to notify the applicant and the United States Drug Enforcement Administration of any changes relating to the cell phone number (702) 374-2864, IMEI: 310410190775504, including changes to subscriber information, and to provide prior notice to the applicant and the United States Drug Enforcement Administration before terminating or changing service to the cell phone number.

34.     The United States further requests that the Court order that the United States Drug Enforcement Administration and the applicant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

35. The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order AT&T Corporation and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and Order, the resulting pen-trap devices, or this investigation, except as necessary to effectuate the Order, unless and until authorized by this Court.

36. The United States further requests, pursuant to 18 U.S.C. § 2703(c) and (d), that Cingular Wireless, Sprint Nextel Corporation, Leap Wireless Communications, Inc., Cricket Communications, T-Mobile USA, Cellco Partnership d/b/a Verizon Wireless, AT&T Wireless, Google, and/or any other provider of wire communications service, provide subscriber information as defined in 18 U.S.C. § 2703(c)(2) pursuant to this Order for the accounts revealed by the pen-trap devices to the United States Drug Enforcement Administration.   The United States further requests that the Order require Cingular Wireless, Sprint Nextel Corporation, Leap Wireless Communications, Inc., Cricket Communications, T-Mobile USA, Cellco Partnership d/b/a Verizon Wireless, AT&T Wireless, Google, and/or any other provider of wire communications service, not to notify any person, including the subscribers or customers of the account(s) for which subscriber information is provided, of the existence of the Order for the period of one year from the date of the order. *See* 18 U.S.C. § 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id*. In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation that is

neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order may seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation may be stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

37. The United States further requests that this case, namely the application and any resulting order, be restricted from all public access until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1). In addition, as explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to restrict these documents from public access because their premature disclosure may seriously jeopardize that investigation.

38. The foregoing is based on information provided to me in my official capacity by agents of the United States Drug Enforcement Administration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 19, 2019.

                                              JASON R. DUNN
                                              UNITED STATES ATTORNEY

                                              _*s/ Jeremy Chaffin*__
                                              Jeremy Chaffin
                                              Assistant United States Attorney
                                              205 N. 4th Street, Suite 400
                                              Grand Junction, CO 81501
                                              Email: Jeremy.chaffin@usdoj.gov